The President
delivered the opinion of Te Court.
We will discharge the case from every thing connected with the division made under the order of Essex County Court. There was no suit commenced, and ti ¡e order was entirely ex parte.
It is the proper province oí a Court of Equity to decree the specific execution of marriage articles, where the apparent Intention of the parties will direct the decree, without a strict scanning of the articles according to nice grammatical rules, or the technical meaning of the words.
It is objected, in the first place, that there are no parties to this agreement. Mr. 'Roane and Mrs. Cook (the intended wife) are named as the contracting par-' ties. All covenants refer to them, and the property spoken of refers to their property—2d. It Is objected, that there is no consideration. It is plain, that the Intended marriage was the consideration ; and the motives expressed are, to make a provision for her, and to preserve peace in the family.
The first clause, though badly expressed, is easy to be understood. What were the respective marital rights of the parties is not contemplated, or defined; but whatever they were, the settlement was not to meddle with them, but ivas to commence on the dissolution of the marriage. No provision is made for the case of his surviving, but In the case of her outliving him, her provision is fixed, as to the three classes of his property.
The 2d clause relates to the land, and describes what part she shall hold in lieu of dower: about this there Is no dispute; one thing however might bs remarked, that as his lands, and not keRs, were the subject of this clause, it induces an opinion, that his slaves, and not her’s, were also the subject of the 3d clause. It is contended, that under this danse, the wife’s slaves are to form a part of the twenty which are to be allotted to her; and that only so many of his are to be added, as will make up that number. This construction, it is said, is reasonable, because the bus- *68 band had but forty slaves at the time of hit; death, arid twenty would be the half of that number, instead of a third, the proportion contemplated by the contracto jjut jt js ¡n proof that the estimate was made upon seventy slaves, of which he was possessed at the time of the gifts made to his sons.
It is also argued, that Mr. Roane was possessed of his wife’s slaves at the time of his death, that they formed a part of the fund out of which the twenty were to be taken, and therefore that they should make a part of the number. The possession spoken of in this clause, means property, and not a mere holding. It means the same thing as is intended by the subsequent words, “ of the slaves of the said WilliamP He had a right to Hold her slaves during their joint lives, but the moment of his death put an end to his right. The contract operated upon, and gave them to another ; and therefore they could not form any part of the stock out of which her dower was to be taken. Besides, the different degree of interest, which she had in her own slaves, from that which she would have in dower slaves, seems conclusive, that they were not intended to be coupled together. But if, in this clause, the question be doubtful, the next fully explains it.
Hitherto the parties appear to have contemplated the husband’s estate, and the wife’s provision out of that. In the 4th clause, which in the settlement, is called the third, they take up the subjeetofthe wife’s slaves, and speak of them very inaccurately. It appears as if they had formed an intention for providing for the issue of the marriage, but no such provision is made, except by implication, and as there was no issue, it is immaterial.
Nor is any provision made for the case of the husband’s surviving ; in which event he would therefore have been entitled to her slaves 5 but neither did that event happen.
The event provided for did take place. She survived, and had no child living at his death, when she was to be vested with the slaves which came by her. *69 &ud then' increase, in such absolute manner, that she might dispose of them to whom she pleased, or they were to descend to her heirs. The child spoken of in this clause, means child of the marriage, since none other could be living at his death. Ser death was probably mentioned in order to provide for the ease of such s child living at his death, and dying before her.
Upon the whole of this point, the Court approve the decree, that the dower slaves shall be made up twenty in number out of Mr» Roanas slaves, independent, of hvs They also approve the decree as to the chariot horses.
Decree affirmed with costs.